KRENIE C. FRONTIS ET AL. *v.* MILWAUKEE INSURANCE COMPANY

ALCORN, HOUSE, COTTER, THIM and RYAN, Js.

Argued March 5—decided May 21, 1968

*David B. Greenberg,* for the appellant (defendant).

*Cleaveland J. Rice, Jr.,* with whom was *William P. Simon,* for the appellees (plaintiffs).

RYAN, J. This is an action by the plaintiffs to recover on a fire insurance policy issued to them by the defendant. In a companion case, the plaintiffs brought a similar action on a policy issued by the Home Insurance Company. The trial court found the issues for the plaintiffs in each case, and the defendant insurance companies have appealed. It has been stipulated by the parties that any judgment rendered by this court in the present case shall be conclusive upon the parties in the action against the Home Insurance Company.

The case was presented to the trial court on the following stipulation of facts: On January 31, 1963, the plaintiffs were the owners in fee of the northerly half of a four-story, commercial building in New Haven, hereinafter referred to as the Frontis building. The southerly half of this building was then owned by a stranger to this suit. Adjoining the Frontis building on the north was another four-story building, hereinafter referred to as the Maguire building. The Frontis building and the Maguire building had a mutual system of support in that each building relied for vertical and lateral support upon a common party wall and the other building itself. The party wall was twelve inches wide, was made of interlaced brick, and extended vertically from the basement to the top of the third story of each building. It constituted the entire north wall of the Frontis building from front to rear and also served as the south wall of the Maguire building. The property line ran through the center of the wall. The ends of the floor joists of each building rested in pockets on each side of

the party wall. Each pocket was approximately two inches wide, ten inches high, and four inches deep. At each floor level there was one floor joist and pocket about every eighteen inches on each side of the party wall from the front to the rear of each building. The wall and the two buildings were constructed in this fashion some time prior to 1881, at which time the center line of the party wall was mentioned in a deed of a predecessor in title of the Maguire building as the southerly boundary of the Maguire building. Both the Frontis and the Maguire buildings have been in separate ownership since 1873. Above the third story of each building, directly above the bonded party wall, there was a separate unbonded four-inch wall on the Frontis side and an eight-inch wall on the Maguire side for the fourth story of each building.

On January 31, 1963, a fire occurred in the Maguire building, and extensive damage was caused to the second, third and fourth stories of that building. The party wall itself, however, was not burned or damaged, except that the lateral support which the party wall had previously enjoyed from the Maguire building was impaired. After the fire, the Maguire building was structurally unsafe and presented a hazard to life and property. Partial demolition of the upper stories was performed the day after the fire as an emergency measure, and promptly thereafter the second, third and fourth stories were removed, all by order of the building inspector of the city of New Haven.

The removal of the three upper stories of the Maguire building left the Frontis building with inadequate lateral support. The party wall itself was left standing, but, without the lateral thrust from the Maguire building, it was not sufficient to sup-

port adequately, or to counter the lateral thrust of, the Frontis building. Neither the third nor the fourth story of the Frontis building could with safety be left standing without corrective support measures, which were impractical and prohibitively expensive. The building inspector of the city of New Haven ordered that such corrective measures be taken or, alternatively, that the Frontis building be reduced in height until a structurally safe north wall was reached. Thereupon, the third and fourth stories of the Frontis building were removed, and a roof put over the second story.

The only part of the Frontis building on the Frontis side of the property line which suffered burning was a window. The amount of the plaintiffs' loss by reason of the burning of this window was $39.16. The amount of the plaintiffs' loss by reason of the loss of support of their building was $6887.61.

The defendant, the Milwaukee Insurance Company, in the present case and the defendant, the Home Insurance Company, in the companion case had insured the plaintiffs' building against "direct loss by fire" under separate policies, each in the amount of $7500. The companies are agreed that the plaintiffs are entitled to recover the loss of $39.16 and in addition the loss of $6887.61 if it is a "direct loss by fire" under the terms of the policies and that the insured loss shall be borne one-half by each of the companies.

In addition, the parties have stipulated that the phrase "direct loss by fire" is to "have the meaning of the phrase as it appears in said policies, taking into account such of the provisions of the policy as may affect its meaning" and that there has been no express agreement between the owners of the

Frontis building and the owners of the Maguire building, or any of their predecessors in title, regarding support of the party wall.

The only issue raised by the defendant's assignments of error is whether the plaintiffs' loss, brought about by the removal of the third and fourth stories of the Frontis building, was a "direct loss by fire" within the meaning of the policy. The defendant, in its brief, seeks for the first time to raise an additional issue as to whether the plaintiffs had an insurable interest in the subject matter for which the loss is claimed. There is no indication in the record that this question was raised in the trial court and no assignment of error has been made concerning it. For these reasons we do not consider it. *Krulikowski* v. *Polycast Corporation,* 153 Conn. 661, 667, 220 A.2d 444.

"Loss by fire within the policy's coverage is not limited to fire damage; rather, all losses are covered which are directly, proximately, or immediately caused by a fire or combustion. In other words, the damage for which fire insurers are liable is not confined to loss by actual burning and consuming, but they are liable for all losses which are the immediate consequences of fire or burning, or for all losses of which fire is the proximate cause. This follows from the fact that the fair and reasonable interpretation of a policy of insurance against loss by fire will include within the obligation of the insurer every loss which necessarily follows from the occurrence of the fire, to the amount of actual injury to subject of the risk, whenever that injury arises directly and immediately from the peril, or necessarily from incidental and surrounding circumstances, the operation and influence of which could not be avoided." 10 Couch, Insurance (2d Ed.)

§ 42.19. " '[F]ire . . . may be the proximate, that is, the dominant and efficient cause of the loss, though it starts outside the premises insured and never extends to them in the form of combustion.' " *Fogarty* v. *Fidelity & Casualty Co.*, 122 Conn. 245, 251, 188 A. 481 (quoting from Richards, Law of Insurance [4th Ed.] p. 330). Two Minnesota cases frequently cited are regarded as leading cases. They are *Ermentrout* v. *Girard Fire & Marine Ins. Co.*, 63 Minn. 305, 65 N.W. 635, and *Russell* v. *German Fire Ins. Co.*, 100 Minn. 528, 111 N.W. 400. In the *Ermentrout* case, there was a party wall between the insured building and one adjacent to it. The latter building caught fire and was partially consumed, and, as a result of the fire, it fell, carrying down with it the partition wall and a part of the insured building. The court held that the fall of the insured building was "the result of fire" and a "direct loss or damage by fire" although no part of it ignited or was consumed by fire. "To render the fire the immediate or proximate cause of the loss or damage, it is not necessary that any part of the insured property actually ignited or was consumed by fire. . . . The word 'direct,' in the policy, means merely 'immediate,' or 'proximate,' as distinguished from 'remote.' " *Ermentrout* v. *Girard Fire & Marine Ins. Co.*, supra, 308. In the *Russell* case, a three-story building was insured against loss or damage by fire. Fire consumed the interior of an adjacent five-story building, leaving standing an unsupported brick wall sixty-nine feet high. Seven days later a strong wind arose, and the brick wall fell on the plaintiff's insured, three-story building, causing damage. It was held that the fire and not the wind was the proximate cause of the loss. "[W]hat is meant by proximate cause is not that

which is last in time or place, not merely that which was in activity at the consummation of the injury, but that which is the procuring, efficient, and predominant cause." *Russell* v. *German Fire Ins. Co.,* supra, 534; see also *Princess Garment Co.* v. *Fireman's Fund Ins. Co.,* 115 F.2d 380 (6th Cir.); *Automobile Ins. Co.* v. *Thomas,* 153 Md. 253, 138 A. 33; *Freed's, Inc.* v. *American Home Fire Assurance Co.,* 305 Mich. 89, 8 N.W.2d 923; *Marshall Produce Co.* v. *St. Paul Fire & Marine Ins. Co.,* 256 Minn. 404, 98 N.W.2d 280; *Mork* v. *Eureka-Security Fire & Marine Ins. Co.,* 230 Minn. 382, 42 N.W.2d 33; 29A Am. Jur., Insurance, § 1288.

The defendant also urges that a provision of the policy excludes from coverage loss caused directly or indirectly by order of any civil authority. The pertinent portion of this exclusion reads: "This Company shall not be liable for loss by fire or other perils insured against in this policy caused directly or indirectly, by . . . (h) order of any civil authority except acts of destruction at the time of and for the purpose of preventing the spread of fire, provided that such fire did not originate from any of the perils excluded by this policy . . . ." The parties have stipulated that the phrase "direct loss by fire" is to have the meaning of the phrase as it appears in the policy, taking into account such of the provisions of the policy as may affect its meaning. Under our rule, the defendant should have pleaded this exclusion as a special defense if it intended to rely on it. *Alderman* v. *Hanover Ins. Group,* 155 Conn. 585, 589, 236 A.2d 462; *O'Brien* v. *John Hancock Mutual Life Ins. Co.,* 143 Conn. 25, 29, 119 A.2d 329. We need not determine whether it was the intention of the plaintiffs to waive the requirement that the exclusion be spe-

cially pleaded because, in view of our interpretation of the terms of the policy in the light of the facts of this case, our consideration of the exclusion does not enure to the advantage of the defendant.

Was the plaintiffs' loss in the removal of the third and fourth stories of the Frontis building "a direct loss by fire" within the meaning of the policy, or was it caused by order of a civil authority? "In the determination of what caused the loss or damage, the cause or agency which is nearest in time or place to the result is not necessarily to be chosen. The active efficient cause that sets in motion a train of events which brings about a result without the intervention of any force started and working actively from a new and independent source is the proximate cause. . . . In the determination whether a loss is within an exception in a policy, where there is a concurrence of two causes, the efficient cause—the one that sets the other in motion—is the cause to which the loss is to be attributed, though the other cause may follow it and operate more immediately in producing the disaster. 6 Couch, Insurance, p. 5303; *The G. R. Booth,* 171 U.S. 450, 460, 19 S. Ct. 9, 43 L. Ed. 234; *Aetna Fire Ins. Co.* v. *Boon,* 95 U.S. 117, 130, 24 L. Ed. 395; *Brown* v. *St. Nicholas Ins. Co.,* 61 N.Y. 332, 337; 2 Richards, Insurance (5th Ed.) § 275, p. 925; Vance, Insurance (3d Ed.) p. 917." *Edgerton & Sons, Inc.* v. *Minneapolis Fire & Marine Ins. Co.,* 142 Conn. 669, 673, 674, 116 A.2d 514.

In the instant case, although the party wall was not burned or damaged, the lateral support which the party wall had previously received from the Maguire building was impaired by the fire, as a result of which the Maguire building was structurally unsafe and presented a hazard to life and prop-

erty. Demolition of the upper stories of the Maguire building was performed as a matter of public safety. In consequence of this demolition, the Frontis building was left with inadequate lateral support, and the third and fourth stories of the Frontis building could not be left without corrective support measures, which were impracticable and prohibitively expensive. The damage to the plaintiffs' building was not caused by the order of the building inspector. His action in the interest of public safety was in recognition of a condition already in existence. The conclusion of the trial court that the active, efficient cause which led to the damage to the plaintiffs' building was the fire which destroyed the upper stories of the Maguire building cannot be disturbed.

There is no error.

In this opinion the other judges concurred.