Hopkins, Merita A., J.
INTRODUCTION
This is an insurance policy coverage dispute between plaintiffs Tocci Building Corporation (“Tocci”) and Candlewood Hotel Company (“Candlewood”) and defendant Commonwealth Insurance Company (“Commonwealth”). The plaintiffs bring counts for breach of contract (Count I), declaratory judgment (Count II), and damages under G.L.c. 93A (Count III). Both parties move for summary judgment. For the reasons set forth below, defendant Commonwealth’s motion for summary judgment is ALLOWED, and the plaintiffs Tocci and Candlewood’s cross motion for summary judgment is DENIED.
BACKGROUND
I. Damage to Retaining Wall
Plaintiff Candlewood Hotel Company (“Candle-wood”) had engaged plaintiff Tocci Building Corporation (“Tocci”) to constuct a hotel in Burlington, Massachusetts. The contract required that Tocci construct a 1,200-foot-long retaining wall separating elevated portions of the site from the hotel’s parking lot. Tocci hired subcontractors to design and construct the wall. On June 6, 2000, after the completion of the retaining wall but before completion of the hotel, a rainstorm occurred wherein more than four inches of rain fell on the property. Rainwater flowed from the parking lot (where storm drains had yet to be built) into the earth behind the retaining wall. This weakened the retaining wall, causing a 100-foot portion of it to collapse. The remainder of the retaining wall did not sustain any physical loss or damage.
On June 8, 2000, an inspector from the Town of Burlington (“Town”) deemed the retaining wall unsafe due to its failure two days prior and issued a stop work order. Thereafter, the Town hired structural and geotechnical engineers to assess whether the retaining wall’s design and construction were structurally adequate. In early August 2000, the Town gave Tocci permission to repair the 100-foot portion damaged in the storm. Those repairs were substantially completed by August 14, 2000; however, Tocci had to await Town approval before it could complete grouting. Tocci did not receive such approval until November. On August 15, 2000, the Town informed Tocci that the undamaged portion of the retaining wall, as constructed, was unsafe and did not conform to the plan submitted to and approved by the Town. It ordered Tocci to rebuild accordingly. Tocci completed work on the rest of the retaining wall in November 2000. The hotel opened shortly thereafter, 110 days behind schedule.
*523 II. Candlewood’s Insurance Claim[2]
Candlewood insured the Burlington property under a policy with Commonwealth (“the policy”), and following the storm, it submitted a claim for its losses arising from the flood. Commonwealth retained an independent adjuster, who investigated the claim with the assistance of an engineer. By letter dated April 25, 2001, Commonwealth informed Candlewood that it would cover the costs of repairing the damaged portion of the retaining wall ($11,950.00), cleanup and public safety expenses ($56,500), and two weeks of business interruption ($14,375.00). The subtotal was $82,825.00. After subtracting the $25,000.00 deductible, Commonwealth paid Candlewood $57,825.00. It tendered payment on June 24, 2003, along with a letter, which stated, in part;
It is Commonwealth’s position that the sum tendered herewith constitutes the maximum amount recoverable under the policy, and that no coverage exists for any and all other claims or portions of claims against the policy in respect of the Incident . . . With respect to claims for insurance coverage under the Commonwealth policy and arising out of the Incident other than those claims addressed by this payment, whether asserted in the Litigation or not, Commonwealth reserves all of its rights under the policy and otherwise.
(Exhibit F to Commonwealth’s Motion for Summary Judgment.) Commonwealth asserts that its letter memorializes a reservation of rights agreed upon by the parties. The plaintiffs not only dispute the existence of such an agreement, but also contend that Commonwealth’s letter constituted an admission of coverage.
The plaintiffs filed the present action against Commonwealth on May 30, 2002.[3] They claim that Commonwealth failed to comply with the terms of the policy by (1) failing to cover the costs incurred in bringing the retaining wall into compliance with the Town’s building code, and (2) compensating the plaintiffs for only two weeks of business interruption rather than the entire 110-day delay in opening the hotel.
DISCUSSION
I. Insurance Policy’s Terms
The policy covered the time period of August 1, 1999, through November 1, 2000. Candlewood had coverage through Commonwealth’s basic policy, entitled the “Difference in Conditions” form, and through additional coverage provided in attached Endorsements. Portions of the policy relevant to the present dispute are as follows:
a. Interests Insured
The Differences in Conditions form, paragraph 3(a), provides coverage for:
... all buildings and other structures as described in forms and or endorsements attached hereto and business personal property, owned by the Insured usual to the occupancy of the Insured, all while on premises, owned, leased or occupied by the Insured and including interests in improvements and betterments in buildings occupied but not owned by the Insured. Coverage is extended to newly acquired property and property under the course of construction. (Page 0025.)[4]
Candlewood opted to insure additional property described in attached Endorsements. Relevant to the present dispute is Endorsement 1, which provides, “As respects the Differences in Conditions form, Item 3.a is deleted in its entirety and amended to read as follows.” It then enumerates categories of items insured under the policy, such as outdoor furniture, drains, foundations, and parking lots. It also lists “retaining walls.” (Page 0019A.)
b. Perils Insured Against
Paragraph 1 of the Difference in Conditions form provides, “This Policy insures against all risk of direct physical loss or damage to the insured property from any external cause during the period of this policy except as hereinafter excluded.” (Page 0025.)
An attached Endorsement specifically includes flood damage as an insured-against peril. (Page 0042.) The liability is limited to $5,000,000.00 per year, with a deductible of $25,000.00.
The policy also contains a Building Laws Endorsement, which provides coverage for “loss occasioned by the enforcement of any state or municipal law or ordinance regulating the construction or repair of buildings and in force at the time such loss occurs, which necessitates the demolition of any portion of the insured building(s) not damaged by the peril(s) insured against.” (Page 0050.) This Endorsement is subject to liability limits, none of which are relevant to the present dispute.
An endorsement entitled “Contingent Liability from Operation of Building Laws Endorsement — Demolition and Increased Time to Rebuild” (“the Cost of Construction Endorsement”),[5] provides, in relevant part:
[Commonwealth] shall, in the case of loss covered under this policy, be liable also for loss to the interest insured by the Policy, occasioned by the enforcement of any state or municipal law or ordinance regulating the construction or repair of buildings and in force at the time such loss occurs, which necessitates the demolition of any portion of the described buildings(s) not damaged by the peril(s) insured against. [Commonwealth] shall also be liable for loss due to the additional period of time required for repair or reconstruction, in conformify with the minimum standards of such law or ordinance, of the building(s) described in this policy damaged by a peril insured against. (Page 0052.)
*524 c. Business Interruption Provisions
The policy’s business interruption coverage is found in the Difference in Conditions form and provides as follows:
Business Interruption
Subject to all the terms and conditions applicable to property insured hereunder:
a) This policy shall also cover against loss resulting from necessary interruption of business conducted by the Insured caused by direct physical loss, damage, or destruction caused by the peril(s) Insured against during the term of the policy, to buildings and other structures or personal property (as defined in Article 3)
c) The length of time of suspension for which loss may be claimed shall not exceed such length of time that would be required with the exercise of due diligence and dispatch to rebuild, repair or replace such part of the property described herein which has been destroyed or damaged commencing with the date of such destruction or damage. (Page 0025.)
d.Civil Authority Provision
The policy’s Civil Authority Provision covers, for no more than two consecutive weeks, business interruptions occurring where “access to the premises is prohibited by order of civil authority” as a result of direct physical loss or damage to the insured or adjacent property. (Page 0027.)
e. Exclusions
The Differences in Conditions form, at paragraph 6(e), specifically excludes from coverage claims resulting from “errors in design, errors in processing, faulty workmanship, or faulty materials.” (Page 0028.) Paragraph 4(g) of the Differences in Conditions form provides that the policy’s business interruption coverage “does not insure against any increase of loss resulting from . . . enforcement of any local or state ordinance or law regulating the construction, repair, or demolition of property insured.” (Page 0027.)
The policy also includes an Additional Special Exclusion Endorsement, which provides, in relevant part:
Exclusion Endorsement — Property Damage
This Policy does not insure against loss caused by any of the following. However, any ensuing loss not excluded or excepted in this policy is covered.
C. Faulty, inadequate, or defective:
2. design, specifications, workmanship, repair, construction, renovation, remodeling, grading, or compaction;
3. material used in repair, construction, renovation, or remodeling; of part of all of any property on or off the insured’s premises (Page 0045.)
f. Replacement Cost
The Replacement Cost Endorsement limits coverage to the cost of repairing, replacing, or reinstating, whichever is the least, subject to the following provisions:
(a) The repairs, replacement or reinstatement (all hereinafter referred to as “replacement”) must be executed with due diligence and dispatch;
(b) Until replacement has been effected the amount of liability under the policy in respect of loss shall be limited to the actual cash value at the time [of] loss;
(c) If replacement with material of like kind and quality is restricted or prohibited by any by-laws, ordinance or law, any increased cost of replacement due thereto shall not be covered by this Endorsement. (Page 0046.)
The Endorsement also limits Commonwealth’s liability to the smallest of the following amounts:
i) the amount of the Policy applicable to the destroyed or damaged property;
ii) the replacement cost of the property or any part thereof identical with such property and intended for the same occupancy and use; and
iii) the amount actually and necessarily expended in replacing said property or any part thereof. (Page 0046.)
II. Motions for Summary Judgment
a. Commonwealth’s Motion for Summary Judgment
Commonwealth moves for summary judgment on the basis that it did in fact comply with the terms of the policy. With regards to Candlewood’s claim for cost of repairing the retaining wall, Commonwealth argues that the policy only required it to pay for the costs of repairing the damaged portion of the retaining wall to its pre-storm condition. It argues that any additional costs, including the grouting of the wall, resulted from Tocci’s initial failure to build the retaining wall according to Town standards, not from storm damage. Commonwealth also asserts that the plaintiffs’ claims are precluded under both the Exclusion Endorsement for Property Damage, which denies coverage for losses resulting from faulty, inadequate, or defective design and workmanship (Page 0045), and paragraph 6(e) of the Differences in Conditions form, which excludes from coverage damages resulting from faulty workmanship and faulty materials. (Page 0027.)
Commonwealth further argues that the business interruption provision of the policy does not require it to pay for the entire 110 days of business interruption, as it limits coverage to the length of time required with exercise of due diligence and dispatch. (Page 0025.) Commonwealth argues that two weeks of business *525 interruption was reasonable, if not generous, under this provision, citing Toccf s admission that if the town had not issued a stop work order, it could have repaired the retaining wall in less than a week. (Tocci’s Executive Summary, Exhibit D to Commonwealth’s Motion for Summary Judgment.)
Commonwealth also argues that any delays in opening the hotel resulted from the Town’s requirement that Tocci remedy the retaining wall’s preexisting code violations, not from the flood damage. It notes that not only does the policy deny coverage for losses caused by faulty workmanship (Pages 0028 and 0045), but it also specifically excludes business interruption losses resulting from enforcement of local or state ordinances or laws regulating the construction, repair, or demolition of the insured property. (Page 0027.) Commonwealth further asserts that the policy’s Civil Authority provision (Page 0027) does not cover the plaintiffs’ claim, as this provision applies only in the event of a large-scale emergency or natural disaster.
Finally, Commonwealth contends that the Cost of Construction Endorsement applies only to buildings and therefore covers none of the plaintiffs’ claims, all of which arise from damage to the retaining wall. In support of this contention, Commonwealth notes that while the Differences in Conditions form applies to “buildings” and “other structures” (Page 0025, paragraph 3(a)), the Cost of Construction Endorsement applies only to “buildings” (Page 0052). It argues that a retaining wall is not a building, citing Black’s Law Dictionary, which defines a building as “a structure with walls and a roof, esp. a permanent structure,” and a structure as “any construction or piece of work artificially built up or composed of parts of purpose-fullyjoined together.” Commonwealth goes on to argue that if the parties had intended the Cost of Construction Endorsement to include “other structures” or “retaining walls,” they would have stated so. Commonwealth also notes that Endorsement I, which lists retaining walls as an insured interest, specifically applies to the Differences in Conditions form only, not to additional categories of coverage provided in the Endorsements. (Page 0019A.)
In opposition, the plaintiffs assert that the language of the policy supports their position that Commonwealth failed to provide the required coverage. First, the plaintiffs argue that the Cost of Construction Endorsement (Page 0052), which specifically provides coverage for construction and repairs required by municipal law or ordinance, apply to repair costs and business interruption losses occasioned by damage to retaining walls. In support of this contention, they assert that Endorsement 1, which specifies retaining walls as an example of the “buildings and other structures” covered under the policy, applies to both the Differences in Condition form and to the Endorsements. Alternately, they argue that should the court find the policy language ambiguous, it should construe the language in their favor, citing Hakim v. Massachusetts Insurers’ Insolvency Fund, 424 Mass. 275, 281 (1997). They also contend that the policy covers expenses incurred in remedying ordinance violations that existed prior to the storm, citing federal district court cases from Texas and Tennessee, which held that similarly worded policies covered repairs made to remedy existing code violations.
The plaintiffs also emphasize that the policy’s exclusion of coverage for faulty, inadequate, or defective design and construction does not apply to “ensuing losses.” (Page 0045.) They assert that business interruption losses constitute ensuing losses, and thus they are covered under the Cost of Construction Endorsement. The plaintiffs cite Hanover New England Ins. Co. v. Smith, 35 Mass.App.Ct. 417, 419-21 (1993), in which the court held that coverage may exist for an ensuing loss even where a policy excludes coverage for the direct loss that led to the ensuing loss.
Finally, the plaintiffs argue that Commonwealth is not entitled to summary judgment on the 93A claim, citing Boston Symphony Orchestra., Inc. v. Commercial Union Ins. Co., 406 Mass. 7, 14-15 (1989), where the court held that an insurance company could be liable under 93A for taking an unreasonable position as to the interpretation of the policy and unjustifiably delaying payment.
b. Plaintiffs’ Cross Motion for Summary Judgment
The plaintiffs assert that the reasons supporting their opposition also support their cross motion for summary judgment. In opposition, Commonwealth reiterates many of the arguments put forth in its motion for summary judgment. It also disputes the plaintiffs’ argument that business interruption losses constitute ensuing losses arguing that ensuing losses only apply to physical loss or damage, not to losses occasioned by a municipality’s enforcement of its laws and ordinances. Commonwealth also argues that the plaintiffs’ ensuing loss argument is premised on the illogical assumption that faulty workmanship (excluded under the policy) that causes a delay for the enforcement of a local law or ordinance (also excluded), adds up to a covered loss.
III. Analysis
If free from ambiguity, an insurance contract’s provisions are given their usual and ordinary meaning. Hakim, 424 Mass. at 281. However, if there is “more than one rational interpretation of policy language, the insured is entitled to benefit from the one that is more favorable to it.” Id. “This rule of construction applies with particular force to exclusionary provisions.” Id. at 282. Here, the court finds that the language of the policy is unambiguous. Thus, the court will interpret the policy’s provisions according to their usual and ordinary meaning.
*526 a. Costs of Repairing the Damaged Portion of the Retaining Wall
At oral argument, the plaintiffs limited their claims to those associated with the 100-foot portion of the retaining wall damaged in the storm. In the interest of eliminating ambiguity, the policy limited coverage to the costs of returning the retaining wall to the condition it was in prior to the storm. This coverage did not include the costs of grouting the undamaged part of the retaining wall, as this was not done for the purpose of returning the retaining wall to its prior condition. Rather, Tocci grouted the retaining wall at the Town’s command, after the Town deemed the wall noncompli-ant with local laws. For the same reason, the policy did not cover the costs of bringing the undamaged portion of the retaining wall into compliance with local laws.
The language of the policy unambiguously supports this conclusion. The coverage for costs of repairing the retaining wall are found in the Replacement Cost Endorsement, which limits Commonwealth’s liability to the property’s cash value at the time of the loss. (Page 0046.) Further, the unambiguous terms of the Differences in Conditions form[6] explicitly exclude coverage for extra costs associated with ordinance compliance, and the Costs of Construction Endorsement[7] (which does provide coverage for ordinance compliance in limited circumstances) is unambiguously limited to buildings. The record thus demonstrates that Commonwealth complied with the terms of the policy by reimbursing the plaintiffs for the costs of returning the damaged portion of the retaining wall to the condition it was in prior to the storm. Commonwealth is therefore entitled to summary judgment on the plaintiffs’ claims regarding the costs of repairing the retaining wall.
b. Business Interruption Damages
Commonwealth is also entitled to summary judgment on the plaintiffs’ claims for 110 days of business interruption damage, as the record supports Commonwealth’s position that the 110-day delay in opening the hotel resulted not from the storm damage, but from the Town’s requirement that Tocci bring the retaining wall into compliance with local ordinances.
The policy covers business interruption losses resulting from “direct physical loss, damage, or destruction caused by the peril(s) insured against.” (Page 0025.) It excludes from this coverage increased losses resulting from the enforcement of ordinances and laws regulating the construction, repair, or demolition of the insured property. (Page 0027.) Furthermore, although the Cost of Construction Endorsement provides coverage for damages resulting from additional time required to repair or reconstruct in conformity with local laws or ordinances (Page 0052), this Endorsement specifically limits coverage to "buildings . . . damaged by a peril insured against... and demolition is necessitated” (emphasis added). Thus, the provision applies only to repairs and reconstruction necessitated by damage, not those required because of the insured’s failure to comply with local ordinances. Additionally, the Cost of Construction Endorsement does not apply to retaining walls because retaining walls are not buildings. The plaintiffs’ argument that “buildings” encompass retaining walls by virtue of Endorsement 1 ignores the fact that Endorsement 1 applies only to coverage provided in the Differences in Conditions form (see fn.6, supra), and it also ignores the fact that Endorsement 1 distinguishes between covered buildings and structures, when including retaining walls in its list of covered interests. (Page 19A.)[8]
The policy limits business interruption coverage to the length of time required to rebuild or repair the damaged property with the exercise of due diligence and dispatch. (Page 0026, paragraph 4(c).) As explained above, the policy’s coverage is also limited to repairing damage caused by the storm and does not cover expenses incurred in remedying municipal code violations. Thus, the policy only covers business interruption for the reasonable amount of time needed to restore the damaged portion of the retaining wall to its pre-storm condition. The policy does not provide coverage for business interruption resulting from the retaining wall’s faulty workmanship, poor design, or municipal code violations.
Applying the following facts to the terms of the policy, Commonwealth was required to compensate the plaintiffs for no more than one week of business interruption. Tocci admitted that repairs to the damaged portion of the retaining wall would have been completed in one week, if not for the Town’s requirement that Tocci remedy the noncompliance with Town ordinances. The record also indicates that Tocci repaired the damaged wall in three days. Thus, by compensating the plaintiffs for two weeks of business interruption, Commonwealth actually exceeded its requirements under the policy.
The plaintiffs are incorrect in their assertion that the policy covers expenses incurred in remedying ordinance violations. If this were true, businesses could disregard building codes — negligently or intentionally — secure in the knowledge that their insurers will compensate them for remedying such defects. Neither Commonwealth nor any other insurer is in the business of insuring against noncompliance with the law.
Finally, the plaintiffs argue that they are entitled to 110 days of business interruption damages as a result of the policy’s faulty workmanship exclusion’s exception for ensuing losses,[9] citing Hanover New England Ins. Co. in which the court noted that an ensuing loss may be covered even if the direct loss was not. 35 Mass.App.Ct. at 418-21. An examination of the policy indeed reveals that the faulty workmanship exclusion provides an exception for “any ensuing loss not ex *527 eluded or excepted in this policy.” (Page 0045.) Thus, business interruption damages are excepted from the fauhy workmanship exclusion as long as they are not excluded or excepted elsewhere in the policy. As the policy unambiguously provides that business interruption damages are excluded where, as here, they are based on the enforcement of a local ordinance (Page 0027), the plaintiffs’ business interruptions do not qualify as an exception to the faulty workmanship exclusion. This conclusion in fact is consistent with Hanover New England, in which the court specifically stated, “(E]nsuing losses will be covered, even if the original cause ... is excluded, provided that the ensuing loss is not one that is itself excluded.” Id. at 421.
ORDER
For the foregoing reasons, defendant Commonwealth Insurance Company’s motion for summary judgment is ALLOWED. Plaintiffs Tocci Building Corporation and Candlewood Hotel Company, Inc.’s motion for summary judgment is DENIED.

In February 2001, Candlewood assigned its rights under the policy to Tocci.

Tocci also sued the engineer and subcontractor who designed and built the retaining wall, as well as the site contractor for their “role concerning the discharge or water during the storm” (Civil Action 2001-02261). This case settled in December 2006.

Unless otherwise indicated, all page numbers refer to the insurance policy, attached as Exhibit A to the plaintiffs’ opposition and cross motion for summary judgment.

This provision is also referred to as the DICC Endorsement. The parties use the terms, “Cost of Construction Endorsement” and “DICC Endorsement” interchangeably in their briefs.

The insured interest is determined by the description of the insured interest in the respective form and/or endorsement of the policy.

It is clear from the Cost of Construction Endorsement that a building must incur a loss from a peril insured against and enforcement of state or municipal law necessitates the demolition of a portion of the building not damaged by the peril insured against, for the repair or reconstruction of the building.

Also, the Building Laws Endorsement does not apply to the plaintiffs’ claim, as this Endorsement applies only to (1) buildings (2) that have to be demolished because of state or municipal laws or ordinances.

For purposes of this analysis, the court assumes, without deciding, that business interruptions are ensuing losses.