509 S.E.2d 1

Robert L. MURRAY and Janet L. Murray, his wife; Bernie W. Rees and Julie A. Rees, his wife; and Robert J. Withrow, Plaintiffs below, Appellees,

v.

STATE FARM FIRE AND CASUALTY COMPANY, a Foreign Corporation; Allstate Insurance Company, a Foreign Corporation, Defendants below, Appellants,

and

Robert J. Harris, Defendant below, Appellee.

Nos. 24759, 24760.

Supreme Court of Appeals of West Virginia.

Submitted April 29, 1998.

Decided July 21, 1998.

**480**

David P. Cleek, Esq., Lou Ann S. Cassell, Esq., McQueen, Harmon, Potter & Cleek, L.C., Charleston, West Virginia, Attorneys for Appellant State Farm.

Brent K. Kesner, Esq., Tanya M. Kesner, Esq., Linda Gay, Esq., Kesner, Kesner & Bramble, Charleston, West Virginia, Attorneys for Appellant Allstate.

Ted M. Kanner, Esq., The Ted Kanner Law Office, Charleston, West Virginia, J. Nicholas Barth, Esq., Barth, Thompson & George, Charleston, West Virginia, Attorneys for Appellees Murray, Rees and Withrow.

Larry L. Skeen, Esq., Ripley, West Virginia, Attorney for Appellee Harris.

STARCHER, Justice:

The appellants and defendants below, State Farm Fire and Casualty Company ("State Farm") and Allstate Insurance Company ("Allstate"), appeal an order of the Circuit Court of Jackson County granting summary judgment to several homeowners in a dispute concerning policy exclusions in two homeowners' insurance policies. The policyholders' homes were damaged by rocks falling from the highwall of a 40–year old abandoned rock quarry situated next to the homes. The policyholders' insurance carriers denied coverage, claiming that the applicable insurance policies excluded losses caused by "landslides" and "erosion." The circuit court concluded that the policies did not exclude from coverage losses caused by "rockfalls" and "weathering," and that the plaintiffs' losses were the result of those events. The circuit court held that the plaintiffs were entitled to coverage under the policies.

After reviewing the record, we conclude that questions of material fact exist concerning whether coverage exists under both policies. We reverse the circuit court's order granting summary judgment and remand the case for trial.

I.

*Factual Background*

The plaintiff-appellees in this case—Robert and Janet Murray, Bernie and Julie Rees, and Robert Withrow—are the owners of three adjacent properties on Spring Street in Ripley, West Virginia. The plaintiffs' homes were constructed on their properties in the 1970's. Immediately adjacent to the rear of the three houses is a man-made highwall standing nearly 50 feet high. This vertical highwall is the result of quarrying operations conducted in the 1950's. The highwall is allegedly located on property owned by defendant-appellee Robert B. Harris.

On February 22, 1994, several large boulders and rocks fell off the highwall and onto the houses owned by plaintiffs Murray and Withrow, causing extensive damage. The house owned by plaintiffs Mr. and Mrs. Rees was not damaged by rocks. However, firemen compelled all three families to leave their homes because of the possibility that additional rocks could fall, and turned off all electricity and water. An engineer who examined the highwall several days later concluded that further rockfalls would "continue to occur, some with potentially disastrous results." [1] None of the three families has lived in their homes since February 22, 1994. [2]

Several engineers and geologists examined the property and highwall in the following weeks. Each gave, to some extent, an opinion that what occurred on Spring Street was primarily a "rockfall" and not a "landslide," because no "sliding" was involved: a layer of shale supporting a layer of sandstone "weathered," removing support for the sandstone, and sandstone blocks broke loose and dropped onto the plaintiffs' homes. [3] One expert said that he thought of a rockfall as "almost a vertical displacement free-falling through the air off of a cliff, a highwall, an escarpment." However, several of the experts conceded that rock falls are considered to be a type of landslide, and are accepted as a sub-category of a landslide; and they further agreed that erosion contributed to the moving of the rocks in the instant case.

Furthermore, there is evidence in the record that negligent construction of the highwall behind the plaintiffs' residences, namely the cutting of the rock face at a near vertical angle, contributed to the rockfall. Expert George A. Hall indicated that "the design of the cut-slope on Spring Street did not meet standards which you would reasonably and

1. The March 2, 1994 report from engineer Eric G. Denemark to Mr. Rees stated:

    Looking at the highwall from the Church Street end up to and past the Withrow's yard, there is evidence of other past rockfalls. We feel that this wall is inherently unstable and that these events will continue to occur over time. Immediately behind the Withrow home a large block is already wedged off the sandstone unit and sits, precariously and temporarily, on what is left of the underlying shale. This is an extremely dangerous situation that, in our opinion, places the Withrow home at immediate risk.

    The situation behind your home has not advanced quite as far.... It is only a matter of time before it too will fail resulting in a rockfall similar to that which occurred last week.

    Another factor perhaps worthy of consideration, is that, typically, small pieces of rock will "spall" off the wall sporadically but relatively continuously.... While the potential for structural damages is minimal, a relatively small fragment, grapefruit-size for example, can easily inflict a serious or fatal injury should it strike a person or animal. You may want to consider this when contemplating letting your children or pets play near the highwall. We would consider anywhere in the backyard to be potentially dangerous.

2. The Rees allege that after moving from their home they were unable to afford the mortgage payments. They were forced to convey the property back to the bank holding the deed of trust. The bank then moved the house and relocated it to another site.

    As to the remaining houses, a letter from the City of Ripley Building inspector states that:

    Presently the houses are unsightly, unsafe, and are creating a health hazard. We are requesting they be torn down and removed from their location. We feel it would be unsafe to repair or rebuild either house at their present site. The city will not issue any building permit for rebuilding or repairing either house without first having the rockfall stabilizing and secured.

3. Hobart M. King, an expert hired by the City of Ripley, stated in a letter to the mayor that:

    Because the distinction between a rockfall and a landslide is sometimes important for insurance purposes, I made special effort to determine what had happened....

    Mr. King discussed this distinction in his deposition testimony:

    A. In a landslide, what you have is a mass [of] rock or soil that is sliding over an underlying surface. That sliding takes place across a plane. There is a plane or a surface of failure at the base of the moving material. When I was looking at what had happened in Spring Street, there was no surface of failure along which sliding occurred. Sandstone blocks had fallen from the higher elevation above that shale layer that I previously discussed was underneath the sandstone. So, those two reasons would be why I would call that a rockfall....

    Q. Would you agree that a rockfall is a type of landslide?

    A. No. Slide[s] take place over a surface of failure. A fall occurs when a piece of the earth has broken away and falls independently, no sliding involved.

normally expect for civil engineering purposes of designing cut-slopes." He also said that had proper civil engineering techniques been used when the highwall was created, the danger of a fall like the one that occurred would not be present.

Plaintiffs Murray and Rees filed claims for the losses to their homes with their homeowner's insurance carrier, defendant State Farm. Plaintiff Withrow filed a similar claim with his insurance carrier, defendant Allstate. Insurance agents notified the plaintiffs that State Farm and Allstate would not cover the losses, citing to numerous policy provisions and exclusions, including an exclusion for losses caused by landslide or erosion.

The plaintiffs then filed the instant lawsuit against defendants Allstate and State Farm alleging breach of contract and bad faith. The plaintiffs also sued defendant Harris for nuisance, trespass, and failing to protect the plaintiffs' property from the "dangerous, artificial manmade condition existing on the defendant's property[.]" Defendant State Farm filed a counterclaim against the plaintiffs seeking a declaratory judgment regarding State Farm's obligations under its policies.

The plaintiffs and defendants State Farm and Allstate filed motions for summary judgment concerning coverage under the disputed insurance policies. Through a letter ruling on January 3, 1997 and a subsequent order on March 17, 1997, the circuit court granted summary judgment to the plaintiffs. The circuit court held that the rockfall "is a loss covered under the plaintiffs' respective insurance policies." The court also held that whether the plaintiffs' damages were caused by a rockfall, and the extent of those damages, were issues to be determined by a jury.

State Farm and Allstate now appeal the circuit court's order.

## II.

### Standard of Review

This appeal arises from the circuit court's granting of partial summary judgment to the plaintiff. Our review is de novo. Syllabus Point 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994). In reviewing summary judgment, this Court will apply the same test that the circuit court should have used initially, and must determine whether "it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syllabus Point 3, *Aetna Casualty & Surety Co. v. Federal Insurance Co. of New York*, 148 W.Va. 160, 133 S.E.2d 770 (1963).

In this case we are primarily asked to review the circuit court's interpretation of an insurance contract. In *Payne v. Weston*, 195 W.Va. 502, 506–07, 466 S.E.2d 161, 165–66 (1995), we discussed the applicable standard of review in such cases, stating that "[t]he interpretation of an insurance contract, including the question of whether the contract is ambiguous, is a legal determination which, like the court's summary judgment, is reviewed *de novo* on appeal." "Determination of the proper coverage of an insurance contract when the facts are not in dispute is a question of law." *Pacific Indemnity Co. v. Linn*, 766 F.2d 754, 760 (3d Cir.1985).

When a court interprets an insurance policy, the "[l]anguage in an insurance policy should be given its plain, ordinary meaning." Syllabus Point 1, *Soliva v. Shand, Morahan & Co., Inc.*, 176 W.Va. 430, 345 S.E.2d 33 (1986). "Where the provisions of an insurance policy contract are clear and unambiguous they are not subject to judicial construction or interpretation, but full effect will be given to the plain meaning intended." Syllabus, *Keffer v. Prudential Ins. Co. of America*, 153 W.Va. 813, 172 S.E.2d 714 (1970).

However, "[w]henever the language of an insurance policy provision is reasonably susceptible of two different meanings or is of such doubtful meaning that reasonable minds might be uncertain or disagree as to its meaning, it is ambiguous." Syllabus Point 1, *Prete v. Merchants Property Ins. Co. of Indiana*, 159 W.Va. 508, 223 S.E.2d 441 (1976). "It is well settled law in West Virginia that ambiguous terms in insurance contracts are to be strictly construed against the insurance company and in favor of the in-

sured." Syllabus Point 4, *National Mut. Ins. Co. v. McMahon & Sons, Inc.*, 177 W.Va. 734, 356 S.E.2d 488 (1987).

With these principles in mind, we undertake a plenary review of the disputed policy language to determine whether the plaintiffs' homeowners' policies from defendants Allstate and State Farm provide coverage in the factual situation presented.

## III.

### Discussion

■ Defendants Allstate and State Farm provided the plaintiffs with "all-risk" homeowner's insurance policies.[4] Under an all-risk policy, recovery is allowed for all losses arising from any fortuitous cause, unless the policy contains an express provision excluding the loss from coverage. *Essex House v. St. Paul Fire & Marine Ins. Co.*, 404 F.Supp. 978, 987 (S.D.Ohio 1975). *See generally*, J. Draper, *Coverage Under All–Risk Insurance*, 30 A.L.R.5th 170 (1995).

Both Allstate and State Farm contend that the losses suffered by the plaintiffs are barred from coverage by express policy provisions excluding losses resulting from "earth movement, including but not limited to ... landslide ... [or] erosion[.]"

The defendants challenge the circuit court's order on four grounds. First, both defendants challenge the circuit court's summary judgment order finding that coverage existed under the policies because the plaintiffs' losses were the result of a "rockfall" caused by "weathering," and not excluded by policy provisions regarding "landslide" and "erosion." Second, both defendants argue that the earth movement exclusions are clear and unambiguous, and should therefore not be construed but instead applied to exclude coverage for the plaintiffs. Third, defendant State Farm argues that even if the earth movement exclusion could be construed as ambiguous, an extensive "lead-in" clause in

its policy clarifies any ambiguity and excludes any coverage as to plaintiffs Murray and Rees. Lastly, both defendants argue that the plaintiffs cannot recover for the total loss of their homes due to the potential for a future rockfall, but can only recover for the actual physical damage sustained.

We address these arguments in turn.

### A.

### *The Circuit Court's Summary Judgment Order*

We first address the circuit court's order. While the circuit court's letter ruling and subsequent order are less than perfectly clear, it appears that the circuit court concluded that the boulders that damaged the plaintiffs' homes arose from a "rockfall" rather than a "landslide." Based in part upon the expert testimony in the record, the circuit court construed the policy language strictly against the insurance carriers and found that "the language therein did not include or contemplate a rockfall[.]" The circuit court further referred to expert testimony, apparently to hold that the rockfall was the result of "weathering" as opposed to "erosion," and that the plaintiffs were therefore covered under their homeowners' policies.

Defendants Allstate and State Farm first contend that the circuit court erred in finding that a "rockfall" is not included within the definition of "landslide." The defendants cite to *Dupps v. Travelers Ins. Co.*, 80 F.3d 312 (8th Cir.1996), where the court, addressing a landslide triggered by a sinkhole, stated that "[t]he ordinary meaning of the term 'landslide' includes rocks falling down a bluff.... [T]he only reasonable interpretation of the policy prohibits recovery for rocks which have fallen...." 80 F.3d at 314. Similarly, the court in Syllabus Point 4 of *Olmstead v. Lumbermens Mut. Ins. Co.*, 22 Ohio St.2d 212, 259 N.E.2d 123 (1970) concluded that "[t]he common ordinary meaning of the word

4. Allstate insured Mr. Withrow's home under a "Deluxe Homeowners Policy" which provided that Allstate would pay for any "sudden and accidental physical loss to the property described in the Dwelling Protection Coverage, except as limited or excluded by this policy."

The State Farm Homeowners Policy (Special Form 3) provided to the Murrays and Rees indicates that the policy "insure[s] for accidental direct physical loss to the property described in Coverage A except as provided in SECTION 1— LOSSES NOT INSURED."

'landslide' is a sliding down of a mass of soil or rock on a steep slope."

■ We agree with the defendants that the circuit court erred. We hold that the plain, ordinary meaning of the word "landslide" in an insurance policy contemplates a sliding down of a mass of soil or rock on or from a steep slope. *See generally,* 13A G. Couch, *Couch on Insurance 2d* 48:180 (1982) ("What Constitutes a Landslide").

Allstate and State Farm also argue that the circuit court erred in concluding that "weathering" is different from "erosion," and therefore any loss resulting from weathering is not excluded from coverage. The *Dictionary of Geological Terms* defines "erosion" as "the group of processes whereby earth or rock material is loosened or dissolved and removed from any part of the earth's surface," specifying that it includes the processes of "weathering, solution, corrosion and transportation." The *American Heritage Dictionary* also includes within its definition of erosion the "natural processes, including weathering, dissolution, abrasion, corrosion and transportation, by which material is removed from the earth's surface."

■ We again agree that the circuit court erred. We hold that the plain, ordinary meaning of the word "erosion" in an insurance policy contemplates a natural process that includes weathering, dissolution, abrasion, corrosion and transportation whereby material is removed from the earth's surface.

■ Applying these definitions to the circuit court's order, it is clear that the circuit court's granting of partial summary judgment to the plaintiffs was incorrect. A naturally-occurring "rockfall" is included within the common definition of "landslide," and the process of "weathering" to rock is included as a component of the natural process of erosion. We further hold that the circuit court erred in finding that as a matter of law coverage existed under the policies by applying these definitions. However, as discussed below substantial questions of fact remain to be resolved concerning the existence of coverage.

B.

*Earth Movement Exclusion*

Both insurance policies in this case contain exclusions for "earth movement." The policy issued by Allstate excludes coverage for any loss resulting from:

2. Earth movement, including, but not limited to, earthquake, volcanic eruption, landslide, subsidence, mud flow, sinkhole, erosion, or the sinking, rising, shifting, expanding, bulging, cracking, settling or contracting of the earth. This exclusion applies whether or not the earth movement is combined with water.

Similarly, the policy issued by State Farm excludes coverage for losses resulting from:

b. Earth Movement, meaning the sinking, rising, shifting, expanding or contracting of earth, all whether combined with water or not. Earth movement includes but is not limited to earthquake, landslide, mudflow, sinkhole, subsidence and erosion.

■ When a policyholder shows that a loss occurred while an insurance policy was in force, but the insurance company seeks to avoid liability through the operation of an exclusion, the insurance company has the burden of proving the exclusion applies to the facts in the case. Syllabus Point 7, *National Mut. Ins. Co. v. McMahon & Sons, Inc.*, 177 W.Va. 734, 356 S.E.2d 488 (1987). "Where the policy language involved is exclusionary, it will be strictly construed against the insurer in order that the purpose of providing indemnity not be defeated." Syllabus Point 5, *Id.*

Both of the earth movement exclusions in this case refer to "earth movement" including, but not limited to "earthquake," "volcanic eruption," "landslide," "subsidence," "mud flow," "sinkhole," "erosion," "sinking," "shifting," or "settling." None of these terms is further defined in the insurance policies. The defendant insurance companies argue that the facts in this case show that the rocks and earthen debris that fell on the plaintiffs' homes constitute a "landslide" caused by "erosion," an event within the earth movement exclusions.

The plaintiffs, however, argue that the facts show the damage to their homes was caused by the negligent creation of the high-wall in the 1950's and its negligent maintenance by defendant Harris today, two events that would be covered by the policies.

On the one hand, the exclusions cited in the defendants' policies could bar coverage for solely *natural* events such as earthquakes, volcanic eruptions, and sinkholes. On the other hand, the same exclusions refer to events which could be *man-made,* such as subsidence or earth movement caused by equipment or a broken water line. Or, as alleged in this case, earth movement could be caused by *both man and nature* over a period of time, such as landslides, mudflows, or the earth sinking, shifting, or settling. Because the policy language is reasonably susceptible to different meanings, we believe that the earth movement exclusions in the insurance policies at issue are ambiguous, and must have a more limited meaning than that assigned to it by the defendants.

■ The majority of courts that have considered earth movement exclusions have found them to be ambiguous.[5] Having found the clause to be ambiguous, courts have used two methods of policy construction to examine whether coverage exists or is excluded under the earth movement exclusion.

First, courts have applied two doctrines of construction, *ejusdem generis* and *noscitur a sociis,* to limit the application of the earth movement exclusion to natural, catastrophic events, rather than man-made events.

Second, courts have examined the particular causes of the loss presented by the policyholder, and although an excluded event (such as earth movement) may have been a concurring or contributing cause of a loss, courts have allowed policyholders to recover under an insurance policy if the proximate cause of the loss was an event insured by the policy.

We believe that both approaches are applicable in this case.[6] We therefore examine exclusions in the instant case using the same two approaches.

■ First, having determined that the earth movement exclusions at issue in this case are ambiguous, we apply the construction principles of *ejusdem generis* and *noscitur a sociis.* Under the doctrine of *ejusdem generis,* "[w]here general words are used in a contract after specific terms, the general words will be limited in their meaning or restricted to things of like kind and nature with those specified." Syllabus Point 4, *Jones v. Island Creek Coal Co.,* 79 W.Va. 532, 91 S.E. 391 (1917). The phrase *noscitur a sociis* literally means "it is known from its associates," and the doctrine implies that the meaning of a general word is or may be known from the meaning of accompanying specific words. *See* Syllabus Point 4, *Wolfe v. Forbes,* 159 W.Va. 34, 217 S.E.2d 899 (1975). The doctrines are similar in nature, and their application holds that in an ambiguous phrase mixing general words with specific words, the general words are not construed broadly but are restricted to a sense analogous to the specific words.

In the seminal case of *Wyatt v. Northwestern Mutual Ins. Co. of Seattle,* 304 F.Supp. 781 (D.Minn.1969), the district court considered a summary judgment motion where an insurance company sought, through the operation of an earth movement

---

5. A provision in an insurance policy may be deemed to be ambiguous if courts in other jurisdictions have interpreted the provision in different ways. This rule is based on the understanding that "one cannot expect a mere layman to understand the meaning of a clause respecting the meaning of which fine judicial minds are at variance." C. Marvel, *Division of Opinion Among Judges on Same Court or Among Other Courts or Jurisdictions Considering Same Question, as Evidence That Particular Clause of Insurance Policy is Ambiguous,* 4 A.L.R.4th 1253, § 2[a] (1981).

6. While every insurance policy must be analyzed based upon its own language, numerous courts

faced with analogous policy language have reached nearly identical conclusions. A clear majority of courts continue to find earth movement exclusions ambiguous, and limited in application only to naturally-occurring catastrophic events such as earthquakes. However, a few jurisdictions have concluded that earth movement exclusions are not ambiguous, and apply to absolve the insurance company from any liability under the policy regardless of the cause or type of earth movement.

A collection of these cases is found in Appendix A, attached to this opinion.

exclusion, to avoid liability for losses caused by the negligence of a contractor excavating land adjacent to the policyholder's home. While holding that the exclusionary language was intended to remove from coverage losses resulting from natural causes and natural phenomena, such as earthquakes, the court concluded that questions of fact remained as to whether the movement of earth that damaged the policyholder's house was caused by the actions of third parties. The court reasoned that the earth movement exclusion was created by insurance companies

> ... to relieve the insurer from occasional major disasters which are almost impossible to predict and thus to insure against. There are earthquakes or floods which cause a major catastrophe and wreak damage to everyone in a large area rather than one individual policyholder. When such happens, the very basis upon which insurance companies operate is said to be destroyed. When damage is so widespread no longer can insurance companies spread the risk and offset a few or the average percentage of losses by many premiums. Looking at the special exclusionary clause in the policy here in question, it seems to cover situations where one single event could adversely affect a large number of policyholders.... All of these are phenomena likely to affect great numbers of people when they occur.

> This gives some force to the view that the various exclusions were not intended to cover the situation as here where "earth movement" occurred under a single dwelling, allegedly due to human action of third persons in the immediate vicinity of the damage.

304 F.Supp. at 783. We believe that similar reasoning underlies the exclusions in this case.

Examining the exclusionary terms used by Allstate and State Farm in their context, and applying the rule that ambiguities must be resolved in favor of the insured, we conclude that both earth movement exclusions must be read to refer only to phenomena resulting from natural, rather than man-made, forces.

■■■ Therefore, when an earth movement exclusion in an insurance policy contains terms not otherwise defined in the policy, and the terms of the exclusion relate to natural events (such as earthquakes or volcanic eruptions), which events, in some instances, may also be attributed to a combination of natural and man-made causes (such as landslides, subsidence or erosion), the terms of the exclusion must be read together and limited to exclude naturally-occurring events rather than man-made events.

The second approach consistently taken by courts in construing insurance policies is that for coverage to exist under an insurance policy, policyholders are required to prove that the efficient proximate cause of the loss was an insured risk.[7] For example, in *Huntington, Ashland & Big Sandy Transportation Co. v. Western Assur. Co. of Toronto, Ont.*, 61 W.Va. 324, 57 S.E. 140 (1907), an insurance policy on the policyholder's steamboat excluded coverage for "loss, damage or expense resulting from stranding or grounding, unless caused by stress of weather." The evidence suggested that heavy, gusting winds caused the steamboat to run aground. This Court held that high wind was a "stress of weather," and whether wind was a proximate cause of the loss was a question of fact for the jury. 61 W.Va. at 325–26, 57 S.E. at 140. The Court sustained a jury verdict for the policyholder.

Another example is *LaBris v. Western National Ins. Co.*, 133 W.Va. 731, 59 S.E.2d 236 (1950), where a policyholder sought to recover for the collapse of the roof of a tire repair shop under a policy insuring against "direct loss by windstorm." We stated that in order for a policyholder to recover under such a policy, "wind must be an efficient cause of the loss, and the qualifying word 'direct' in referring to the cause of the loss means 'proximate or immediate.'" 133 W.Va. at

7. As one court indicated, the efficient proximate cause rule is "a rule of construction because certain consequences follow from the terms of the contract and from a legal policy applicable to the situation. Insurers cannot circumvent the rule by redefining causation." *Sunbreaker Condominium Association v. Travelers Ins. Co.*, 79 Wash.App. 368, 375 n. 8, 901 P.2d 1079, 1082 n. 8 (1995) (citations omitted).

739, 59 S.E.2d at 240. We stated in Syllabus Point 2 that "it must be established by a preponderance of the evidence that a windstorm of itself was sufficient to, and did cause the alleged damage to the property insured, though there may be other contributing causes." We concluded that there was no coverage for the policyholder because the evidence showed that the roof collapse was caused by water accumulating on the roof, and not wind. *In accord, Lewis v. St. Paul Fire & Marine Ins. Co.*, 155 W.Va. 178, 182 S.E.2d 44 (1971) (no coverage because policyholder failed to prove damage to building was a "direct loss by windstorm").

The scope of coverage under an all-risk homeowner's policy includes all risks except those risks specifically excluded by the policy. A majority of jurisdictions use the "efficient proximate cause" doctrine [8] in adjudicating coverage issues for all-risk insurance policies, where both a covered and a noncovered peril contribute to a loss.[9] When a loss is caused by a combination of covered and specifically excluded risks, the loss is covered if the covered risk was the proximate cause of the loss. Two leading treatises support this position. According to *Couch on Insurance*:

> In determining cause of loss for purposes of fixing insurance liability, if there is evidence of concurrent causes for the damage, the "proximate cause" to which the loss is to be attributed is the dominant, efficient one that sets the other causes in operation; causes which are incidental are not proximate, even though they may be nearer the loss in both time and place. Where it is said that the cause to be sought is the direct and proximate cause, it is not meant that the cause or agency which is nearest in point of time or place to the result is necessarily to be chosen, since there may be a dominant cause even though concurrent or remote in point of time or place.

L. Russ, 7 *Couch on Insurance 3d* § 101:44 (1997). Similarly, Professor Appleman's treatise states that "where the insured risk was the last step in the chain of causation set in motion by an uninsured peril, or where the insured risk itself set into operation a chain of causation in which the last step may have been an excepted risk," recovery may be allowed. J. Appleman, 5 *Insurance Law and Practice* § 3083 (1969).[10]

---

**8.** Courts use varying terms such as "proximate cause," "efficient proximate cause," "efficient cause," "predominant cause" or "moving cause." As one court grappling with the meaning of the efficient proximate cause doctrine noted,

> Regardless of the name of the doctrine or number of adjectives within it, the law requires a decision as to what event will be held accountable as *the cause* of the loss.... Given the weight of authority, [and] the similarity if not identicalness of efficient proximate cause to proximate cause ... the Court finds that the predominating cause of the loss is the appropriate standard.

*Pioneer Chlor Alkali Co., Inc., v. National Union Fire Ins. Co. of Pittsburgh, Pa.*, 863 F.Supp. 1226, 1231 (D.Nev.1994). The court went on to say in a footnote that:

> Although perhaps containing an unnecessary adjective, and not at all making the doctrine more clear, the Court will use the majority term "efficient proximate cause." To invent a new term would only add to the confusion in this legal nebula where case precedents filled with the legal jargon of efficient proximate cause offer little guidance in the doctrine's application and result.

*Id.*, n. 6. We believe this reasoning is equally applicable to the instant case.

**9.** By one commentator's count, 34 jurisdictions (including West Virginia in *LaBris v. Western National Ins. Co.*, 133 W.Va. 731, 59 S.E.2d 236 (1950)) have adopted some form of concurrent or proximate cause analysis in examining coverage under first-party and/or third-party insurance policies. *See* F. MacLaughlin, *Third–Party Liability Policies: The Concurrent Causation Doctrine and Pollution Exclusions*, 24 Brief 20, 22–23 (1995).

**10.** A current revision to Appleman holds similarly:

> Various problems occur where there is dual, concurring or intervening causation leading to the loss of claim for which coverage is sought. In such a situation, the reasonable expectations of the insured should be considered and upheld which usually means that coverage will be found.... [T]he court may utilize the rule that the efficient proximate cause rule permits a recovery under the policy where the loss occurs due to a loss from a covered peril which also sets into motion a chain of events occurring in an unbroken sequence culminating in damage from an excluded peril.

E. Holmes, 2 *Appleman on Insurance 2d* § 6.2 (1996).

We hold that, when examining whether coverage exists for a loss under a first-party insurance policy when the loss is caused by a combination of covered and specifically excluded risks, the loss is covered if the covered risk was the efficient proximate cause of the loss. No coverage exists for a loss if the covered risk was only a remote cause of the loss, or conversely, if the excluded risk was the efficient proximate cause of the loss. The efficient proximate cause is the risk that sets others in motion. It is not necessarily the last act in a chain of events, nor is it the triggering cause. The efficient proximate cause doctrine looks to the quality of the links in the chain of causation. The efficient proximate cause is the predominating cause of the loss.[11]

One more point is made clear by courts considering the problem of concurrent risks: the question of which event was the efficient proximate cause of the loss is generally a question of fact. *State Farm Fire & Cas. Co. v. Von Der Lieth*, 54 Cal.3d 1123, 1131, 2 Cal.Rptr.2d 183, 188–89, 820 P.2d 285, 290–91 (1991).

After reviewing the record, we conclude that substantial questions of material fact remain for jury resolution. The earth movement exclusions apply to exclude naturally occurring risks. The plaintiffs argue that the evidence currently in the record suggests that the rocks fell from the quarry highwall due to its negligent vertical con-

11. An example of the efficient proximate cause doctrine in action is *Frontis v. Milwaukee Ins. Co.*, 156 Conn. 492, 242 A.2d 749 (1968). The policyholder owned the Frontis building, a four-story building sharing a common wall with an adjoining building. A fire in the adjoining building destroyed the building, requiring its demolition and removal. The only fire damage caused to the Frontis building was a broken window. However, without the lateral support of the adjoining building, the shared common wall could no longer support the Frontis building, requiring the removal of the third and fourth floors of the Frontis building.

The court in *Frontis* was asked to address whether the removal of the top two floors of the Frontis building was a "direct loss by fire" within the meaning of an insurance policy. The court concluded that the loss was covered, holding that a fire can be the proximate, dominant, active and efficient cause of a loss even if the fire starts outside the insured premises and never extends to them in the form of combustion. 156 Conn. at 497, 242 A.2d at 752.

Another example is *Brian Chuchua's Jeep, Inc. v. Farmers Ins. Group*, 10 Cal.App.4th 1579, 13 Cal.Rptr.2d 444 (1992). The policyholder purchased earthquake insurance. An earthquake damaged an underground gasoline tank, and leaking gasoline damaged the soil. The insurance carrier refused coverage for the gasoline clean-up costs citing a pollution exclusion. The court determined that because the risk of earthquake was insured against, if "the trier of fact determines the earthquake was the efficient proximate cause of the leakage, the cleanup expenses will be covered." 10 Cal.App.4th at 1583, 13 Cal.Rptr.2d at 446. Insurance companies sought to have *Brian Chuchua's Jeep* "depublished" by the California Supreme Court arguing its publication would compromise their pollution exclusions because it "mandates an analysis of whether, despite the exclusion, the cause of the loss is covered." The Court refused to depublish the

opinion. *See Third–Party Liability Policies: The Concurrent Causation Doctrine and Pollution Exclusions*, 24 Brief 20, 43 (1995).

For other examples, *see Pioneer Chlor Alkali Co., Inc., v. National Union Fire Ins. Co. of Pittsburgh, Pa.*, 863 F.Supp. 1226 (D.Nev.1994) (rag negligently left in pipeline diverted flow of brine; brine concentrated in pipes corroding small holes; brine then mixed with chlorine creating acidic solution that corroded main pipelines, causing release of chlorine gas; insurance company refused coverage citing exclusion for losses caused by "corrosion;" district court ruled that jury question existed over whether rag or corrosion was the efficient proximate cause of loss); *State Farm Fire & Cas. Co. v. Von Der Lieth*, 54 Cal.3d 1123, 2 Cal.Rptr.2d 183, 820 P.2d 285 (1991) (policyholder alleged that third-party negligence by the state, county, developer and homeowners' association proximately caused landslide that damaged home; insurance carrier refused coverage under "earth movement" and "water damage" exclusions; court held that issue of whether third-party negligence was the efficient proximate cause of the loss was jury question); *Wallach v. Rosenberg*, 527 So.2d 1386 (Fla.App. 1988) (next-door-neighbor failed to maintain sea wall and it collapsed during storm; collapse caused policyholder's sea wall to collapse; insurance carrier denied coverage under exclusion for "earth movement" or "water damage;" court held that jury question was created whether neighbor's negligence, a covered event, was the efficient proximate cause of the loss); and *Vormelker v. Oleksinski*, 40 Mich.App. 618, 199 N.W.2d 287 (1972) (contractor disregarded engineer's report that soil was unstable and built policyholder's house on soil; soil shifted and house damaged, and insurance carrier denied claim citing earth movement exclusion; court held that jury was properly instructed that if earth movement was the sole proximate cause of the collapse, it should return a verdict for defendants).

struction in the 1950's, and its negligent maintenance by the current owner. These risks facially appear to be covered by the language in both policies. Conversely, the defendants argue that the plaintiffs' losses are the result of the excluded event of a landslide caused by another excluded event, erosion. We believe that whichever of these events was the efficient proximate cause of the plaintiffs' losses is a question for the finder of fact.

## C.

### State Farm's Lead–In Clause

■ State Farm contends in its reply brief that a "lead-in" clause in the "Losses Not Insured" section of its policy precludes coverage to plaintiffs Murray and Rees, and excludes coverage for all forms of earth movement, regardless of whether resulting from natural or man-made causes. The State Farm lead-in clause states:

SECTION I—LOSSES NOT INSURED

\*       \*       \*

2. We do not insure under any coverage for any loss which would not have occurred in the absence of one or more of the following excluded events. We do not insure for such loss regardless of: (a) the cause of the excluded event; or (b) other causes of the loss; or (c) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss; or (d) whether the event occurs suddenly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:

The policy then goes on to list numerous occurrences that are excluded, including the previously discussed "earth movement."

State Farm uses unique language in the "Losses Not Insured" section of its policy (which includes the earth movement exclusion), language not employed by other insurance companies in standard all-risk insurance policies. As one court recently recognized in construing an earth movement exclusion,

... State Farm adopted language peculiar to itself, and one of plaintiffs' [insurance] experts describes State Farm as a "deviated company" which employs its own language and is "known in the industry as ones who try to push earth movement as broadly as they can."

*Winters v. Charter Oak Fire Ins. Co.,* 4 F.Supp.2d 1288, 1292 (D.N.M.1998).

The court in *Cox v. State Farm Fire & Cas. Co.,* 217 Ga.App. 796, 459 S.E.2d 446 (1995) considered State Farm policy language nearly identical to that at hand and held the lead-in clause to be ambiguous. The policyholders in *Cox* alleged that their home had been damaged by vibrations from explosions, and that explosions were a covered peril under their homeowner's policy. As in this case, State Farm in that case denied coverage under the earth movement exclusion, and argued that man-made earth movement was excluded by the lead-in clause which expanded the exclusion to cover "natural or external forces." The court stated that:

Because "external" is not defined in the policy, we must give the word its usual and common meaning. As we have found no definition of the word that means anything other than apart, beyond, exterior or connected to the outside (see Webster's Third New International Dictionary), we cannot define the word to include a concept of non-natural or man-made forces as State Farm would have us do. Therefore, we must interpret this provision as excluding coverage arising from natural forces from beyond or outside the property.

217 Ga.App. at 797, 459 S.E.2d at 448 (citation omitted).

We believe a similar analysis applies here. The policy language at issue in this case does not define the term "external," and we must therefore give the word its "plain, ordinary meaning." We can find no definition for "external" that means anything other than outside, apart, or beyond, and we cannot define the word to include man-made forces as State Farm would have us do. As with the court in *Cox,* we interpret the provision as excluding from coverage natural risks arising from beyond or outside the property.

■ State Farm also argues that its lead-in clause operates to defeat the efficient proximate cause doctrine, and argues that if earth movement in any way contributes to a loss, regardless of the proximate cause, then under the lead-in clause the entire loss is excluded from coverage under the all-risk policy. The plaintiffs, however, argue that such a construction reaches a result contrary to the reasonable expectations of policyholders. We agree with the plaintiffs' argument.

■ "With respect to insurance contracts, the doctrine of reasonable expectations is that the objectively reasonable expectations of applicants and intended beneficiaries regarding the terms of insurance contracts will be honored even though painstaking study of the policy provisions would have negated those expectations." Syllabus Point 8, *National Mut. Ins. Co. v. McMahon & Sons, Inc.,* 177 W.Va. 734, 356 S.E.2d 488 (1987).[12]

As in the instant case, where third-party negligence is alleged to be the proximate cause of a loss, we believe a policyholder could reasonably expect to be covered under State Farm's policy. Only through a painstaking review of the lengthy "Losses Not Included" section would a policyholder discover the language suggesting that, because the negligence occurred in conjunction with an excluded event, the loss would not be covered. "Insureds with all-risks insurance likely have heightened expectations because of the comprehensive nature of the coverage and the greater premium rates. These expectations would not often be given effect if recovery was denied whenever an exception or exclusion contributed to the loss." R. Fierce, *Insurance Law—Concurrent Causation: Examination of Alternative Approaches,* 1985 S.Ill.U.L.J. 527, 544 (1986).

An example of the overbreadth of State Farm's position was suggested by the court in *Wyatt v. Northwestern Mut. Ins. Co. of Seattle,* 304 F.Supp. at 783, which stated:

It seems hard to contend that the insurance policy meant to exclude all earth movements, for it is difficult to distinguish between a situation where a piece of heavy equipment breaks loose and hits a house causing serious damage and a situation where that equipment instead hits only an embankment next to a house but causes the earth to move and thereby damages the house. Certainly not all earth movements, or at least those where some human action causes such are included in the exclusion.

However, applying State Farm's interpretation of its policy to the fact pattern proffered by the court in *Wyatt,* there would be no coverage. We believe such an interpretation clearly goes against the reasonable expectations of the parties.

We agree with the court's statement in *Howell v. State Farm Fire & Cas. Co.,* 218 Cal.App.3d 1446, 267 Cal.Rptr. 708 (1st Dist. 1990), that:

Indeed, if we were to give full effect to the State Farm policy language excluding coverage whenever an excluded peril is a contributing or aggravating factor in the loss, we would be giving insurance companies carte blanche to deny coverage in nearly all cases. A similar point was made by the Supreme Court in *Garvey* [*v. State Farm Fire & Cas. Co.,* 48 Cal.3d 395, 408, 257 Cal.Rptr. 292, 299, 770 P.2d 704, 711]. There, the court noted that the *insured* cannot be permitted to claim coverage merely because an included peril is a contributing cause of a loss. The court reasoned that since "[i]n most instances, the insured can point to some arguably covered contributing factor" such a rule would transform an " 'all-risk' " policy into an " 'all-loss' " policy, and would make the insurer liable in almost every case.

The present case presents the inverse situation. Here, the State Farm policies would deny coverage whenever an *excluded* peril is a contributing factor to the loss. Since, in most instances, an insurer can point to some arguably excluded contributing factor, this rule would effectively trans-

---

**12.** "Before the doctrine of reasonable expectations is applicable to an insurance contract, there must be an ambiguity regarding the terms of that contract." Syllabus Point 2, *Robertson v. Fowler,* 197 W.Va. 116, 475 S.E.2d 116 (1996). As noted previously, the policy language at issue in the State Farm policy is subject to several interpretations, and is therefore ambiguous.

form an "all-risk" policy into a "no-risk" policy.

218 Cal.App.3d at 1456–57 n. 6, 267 Cal.Rptr. at 715 n. 6 (citation omitted).

A statement in a concurring opinion to *Howell* makes clear how State Farm's interpretation of the lead-in clause goes against the reasonable expectations of policyholders. Justice Barry–Deal stated that "[n]o reasonable person would pay for insurance against some future peril if it were possible for the insurer to avoid liability by discovering an excluded peril somewhere in the chain of causation.... [W]here an insurer chooses to insure against the direct and proximate results of a certain peril, it may not rely on the concurrence of an excluded cause to deny coverage." 218 Cal.App.3d at 1476, 267 Cal. Rptr. at 728–29.[13]

Our examination of the State Farm lead-in clause leads us to a similar conclusion. As indicated previously, when an insurance carrier chooses to insure against a loss proximately caused by a particular peril, it may not rely on the mere concurrence of an excluded peril to deny coverage. The excluded peril must itself be the efficient proximate cause of the loss. Because State Farm's lead-in clause conflicts with the reasonable expectations of the parties, it should be construed to allow coverage for losses proximately caused by a covered risk, and deny coverage only when an excepted risk is the efficient proximate cause of the loss.[14]

**13.** Another commentator reviewing similar State Farm policy language stated:

This [lead-in] clause, applied at face value, would clearly negate coverage in case of a concurring excepted cause. The clause may clear up any ambiguities in the minds of insurance counsel, but whether it would do so for the insurance consumer is questionable. Indeed, whether such a clause would actually be read by the insurance consumer is questionable. The change should have little impact on the objectively reasonable expectations of the insurance consumer. If anything, the clause is more confusing to the layman than was the old "contributed to, or aggravated by" exception.

Many courts allow recovery when an excepted cause acts concurrently with a covered cause despite increasingly explicit exclusionary language. This trend seems likely to continue regardless of the insurance industry's persistent efforts to refine their policies. Courts appear to look at the exclusionary language only to determine which causes or events are covered and which are not, and pay little attention to surplus verbiage. This approach is most likely explained as a *sub silentio* application of the doctrine of reasonable expectations. R. Fierce, *Insurance Law—Concurrent Causation: Examination of Alternative Approaches*, 1985 S.Ill.U.L.J. 527, 538 (1986).

**14.** We acknowledge that jurisdictions are in conflict over the effect of the State Farm lead-in clause in landslide cases. At least two jurisdictions hold the clause has no effect on limiting coverage: California (*Howell v. State Farm Fire & Cas. Co.*, 218 Cal.App.3d 1446, 267 Cal.Rptr. 708 (1st Dist.1990); and Georgia (*Cox v. State Farm Fire & Cas. Co.*, 217 Ga.App. 796, 459 S.E.2d 446 (1995)). At least five jurisdictions hold that the lead-in clause is enforceable: Alaska (*State Farm Fire & Cas. Co. v. Bongen*, 925 P.2d 1042 (Alaska 1996)); New York (*Kula v. State Farm Fire & Cas. Co.*, 212 A.D.2d 16, 628 N.Y.S.2d 988 (N.Y.A.D.1995)); Utah (*Alf v. State*

*Farm Fire & Cas. Co.*, 850 P.2d 1272 (Utah 1993) and *Village Inn Apartments v. State Farm Fire & Cas. Co.*, 790 P.2d 581 (Utah App.1990)); Nevada (*Schroeder v. State Farm Fire & Cas. Co.*, 770 F.Supp. 558 (D.Nev.1991)); and Arizona (*Millar v. State Farm Fire & Cas. Co.*, 167 Ariz. 93, 804 P.2d 822 (1990)).

We question the holdings of these latter jurisdictions, as they found the earth movement policy language to be unambiguous and clear, and suggested that the policyholder's reasonable expectations were more in line with being a "fervent hope usually engendered by loss." *Millar,* 167 Ariz. at 97, 804 P.2d at 826. These latter jurisdictions also suggest that the policyholder and insurance company freely negotiated and defined the scope of coverage, and intended to exclude the efficient proximate cause doctrine. Such a position is contrary to the position we have taken in our case law that "[i]nsurance contracts are notoriously complex ... and border on the status of contracts of adhesion. Under this view the insured and insurer do not stand in *pari causa*, and therefore, the insured's assent to the agreement lacks completeness in relation to that of the insurer." *Bell v. State Farm Mut. Auto. Ins. Co.*, 157 W.Va. 623, 628–29, 207 S.E.2d 147, 150–151 (1974) (citations omitted). As we said in *National Mut. Ins. Co. v. McMahon & Sons, Inc.*, 177 W.Va. 734, 741–42 n. 6, 356 S.E.2d 488, 495–96 n. 6 (1987):

While this rule may equitably be enforced with regard to a contract negotiated at arm's length between parties of reasonably equivalent bargaining power and signed by each, it would be unfair to apply the general rule in the case of the modern insurance contract. These policies are contracts of adhesion, offered on a take-it-or-leave-it basis, often sight unseen until the premium is paid and accepted, full of complicated, almost mystical, language. "It is generally recognized the insured will not read the detailed, cross-referenced, standardized, mass-

## D.

*Whether the Plaintiffs Suffered a "Direct Physical Loss" To Their Property*

As indicated previously, the Allstate policy provides coverage for any "sudden and accidental loss to the property," while the State Farm policy "insure[s] for accidental direct physical loss to the property[.]" Defendants Allstate and State Farm do not dispute the fact that the plaintiffs' losses were "sudden" and "accidental." Instead, the defendants argue that as a matter of law the insurance carriers cannot be held responsible for the total loss of the plaintiffs' property. The defendants essentially contend that while their policies might cover the actual physical damage to the Murray and Withrow homes, the policies do not cover any losses occasioned by the potential damage that could be caused by future rockfalls.

The appellants cite us to only one case in support of their argument, *Hoffman v. State Farm Fire & Cas. Co.*, 16 Cal.App.4th 184, 19 Cal.Rptr.2d 809 (2nd Dist.1993), and we believe that case is factually and legally inapplicable here.

In *Hoffman*, the court held that policyholders were not entitled to recover under an all-risk homeowner's policy when the damage became apparent over a year *after* the policyholders sold their home, canceled the policy and moved out. The policyholders contended that, a year after they moved out of their home, they discovered an entire region surrounding their former home was subjected to a massive, slow-moving landslide, and that their former home suffered some structural damage. The policyholders contended that they were entitled to recover for the damage to their former home, and to recover for the "just discovered" diminished market value of the property when it was sold. The court stated, in *dicta*, that "[d]iminution in market value is not a covered peril. In fact, insuring land values is illegal in California, and doing

so is a felony misdemeanor." 16 Cal.App.4th at 190, 19 Cal.Rptr.2d at 812 (citations omitted).

*Hoffman* fails to mention four other California cases where the courts held policyholders *could* recover for losses to their homes other than tangible physical damage caused by landslides. *See Strickland v. Federal Ins. Co.*, 200 Cal.App.3d 792, 246 Cal. Rptr. 345 (2nd Dist.1988); *Snapp v. State Farm Fire & Cas. Co.*, 206 Cal.App.2d 827, 24 Cal.Rptr. 44 (2nd Dist.1962); *Hughes v. Potomac Ins. Co.*, 199 Cal.App.2d 239, 18 Cal.Rptr. 650 (1st Dist.1962); and *Pfeiffer v. General Ins. Corp.*, 185 F.Supp. 605 (N.D.Cal.1960). In each case, the cosmetic damage to the policyholders' homes was relatively minor, while the cost of making the home inhabitable usually exceeded the policy limits. In each case, the insurance company refused coverage, and in each case the court held the insurance company liable for the total cost of making the property liveable.

For instance, in *Hughes, supra*, the policyholders awoke one morning to discover 30 feet of their backyard had washed into a creek, leaving their home standing on the edge of a newly-formed 30–foot cliff. The landslide deprived the house of subjacent and lateral support essential to the stability of the house. An insurance adjuster concluded that the house sustained only $50.00 in damage, but that the cost of a retaining wall and fill to support the dwelling was $19,000.00. The insurance carrier denied coverage contending its policy only insured the physical damage to the dwelling. The court rejected this argument and found the appellant insurance carrier liable for the entire loss to the use of the property. The court stated:

> To accept appellant's interpretation of its policy would be to conclude that a building which has been overturned or which has been placed in such a position as to overhang a steep cliff has not been "damaged" so long as its paint remains intact and its

---

produced insurance form, nor understand it if he does." *C & J Fertilizer, Inc. v. Allied Mutual Insurance Co.*, 227 N.W.2d 169, 174 (Iowa 1975); *accord*, 3 *Corbin on Contracts* § 559 (1960); Keeton, [*Insurance Law Rights at Variance with Policy Provisions*,] 83 Harv.L.Rev. [961] at 968 [1970]. The majority rule is that

the insured is not presumed to know the contents of an adhesion-type insurance policy delivered to him, 7 *Williston on Contracts* § 906 B (1963), and we hereby adopt the majority view.

We therefore decline to follow these latter jurisdictions.

walls still adhere to one another. Despite the fact that a "dwelling building" might be rendered completely useless to its owners, appellant would deny that any loss or damage had occurred unless some tangible injury to the physical structure itself could be detected. Common sense requires that a policy should not be so interpreted in the absence of a provision specifically limiting coverage in this manner. Respondents correctly point out that a "dwelling" or "dwelling building" connotes a place fit for occupancy, a safe place in which to dwell or live. It goes without question that respondents' "dwelling building" suffered real and severe damage when the soil beneath it slid away and left it overhanging a 30-foot cliff. Until such damage was repaired and the land beneath the building stabilized, the structure could scarcely be considered a "dwelling building" in the sense that rational persons would be content to reside there.

199 Cal.App.2d at 248–49, 18 Cal.Rptr. at 655.

We believe similar reasoning is applicable to the case at hand. The policies in question provide coverage against "sudden and accidental loss" and "accidental direct physical loss" to property. " 'Direct physical loss' provisions require only that a covered property be injured, not destroyed. Direct physical loss also may exist in the absence of structural damage to the insured property." *Sentinel Management Co. v. New Hampshire Ins. Co.*, 563 N.W.2d 296, 300 (Minn. App.1997) (citations omitted).

The properties insured by Allstate and State Farm in this case were homes, buildings normally thought of as a safe place in which to dwell or live. It seems undisputed from the record that on February 22, 1994 all three of the plaintiffs' homes became unsafe for habitation, and therefore suffered real damage when it became clear that rocks and boulders could come crashing down at any time. The record suggests that until the highwall on defendant Harris' property is stabilized, the plaintiffs' houses could scarcely be considered "homes" in the sense that rational persons would be content to reside there.[15]

We therefore hold that an insurance policy provision providing coverage for a "sudden and accidental loss" or an "accidental direct physical loss" to insured property requires only that the property be damaged, not destroyed. Losses covered by the policy, including those rendering the insured property unusable or uninhabitable, may exist in the absence of structural damage to the insured property.

## IV.

### *Conclusion*

We reverse the circuit court's summary judgment ruling that found as a matter of law that coverage existed under the Allstate and State Farm policies. Because we find substantial questions of material fact in the record concerning the existence of coverage, we remand the case for further proceedings to determine whether the plaintiffs sustained a loss, and whether that loss was proximately caused by the covered risk of third-party negligence, or proximately caused by the excluded natural events of a landslide or erosion.

Reversed and remanded.

### Appendix A

### Cases Construing Earth Movement Exclusions

A. Jurisdictions holding that earth movement exclusions are ambiguous, and limited in application only to naturally-occurring catastrophic events include: *Winters v. Charter Oak Fire Ins. Co.*, 4 F.Supp.2d 1288 (D.N.M. 1998) (water line broke in policyholder's clubhouse, causing soil beneath clubhouse to shift and damaging building; court held that cov-

---

15. *See, e.g., Sentinel Management Co. v. New Hampshire Ins. Co.*, 563 N.W.2d 296 (Minn.App. 1997) (contamination of apartment building by release of asbestos fibers constituted direct, physical loss to property under all-risk policy); *Farmers Ins. Co. of Oregon v. Trutanich*, 123 Or.App. 6, 858 P.2d 1332 (1993) (landlord-policyholder's house contaminated by odors from methamphet-

amine lab run by subtenant in basement; cost of removing odors was a direct physical loss under policy); *Western Fire Ins. Co. v. First Presbyterian Church*, 165 Colo. 34, 437 P.2d 52 (Colo.1968) (policyholder-church, which was rendered unusable due to saturation of soil under and around church with gasoline, sustained a direct physical loss under policy).

erage could exist because earth movement exclusion applied only to naturally-occurring earthquake-type phenomena; any earth movement in this case was caused by a man-made source, that is, a water line); *Cox v. State Farm Fire & Cas. Co.*, 217 Ga.App. 796, 459 S.E.2d 446 (1995) (policyholder's home damaged by vibrations from explosions; insurance company denied coverage citing earth movement exclusion; court found policy ambiguous, applied principle of *ejusdem generis* and found exclusion limited to earth movement from natural causes; man-made forces such as explosions were covered under the policy); *Boston Company Real Estate Counsel, Inc. v. Home Ins. Co., Inc.*, 887 F.Supp. 369 (D.Mass.1995) (before constructing office building, engineers reported soil was unsuitable and would not support building; contractor continued to construct building, and building settled at a rate "exceeding expectations;" court held meaning of earth movement exclusion was confined "to its commonplace usage—referring only to sudden, cataclysmic events (e.g. earthquakes);" gradual soil compression was therefore not earth movement as defined by exclusion); *American Motorists Ins. Co. v. R & S Meats, Inc.*, 190 Wis.2d 196, 526 N.W.2d 791 (1994) (city negligently constructed storm sewer; after heavy rain, water flowed beneath floor of policyholder's building and blast freezer; water froze under freezer floor, causing floor to heave upward damaging walls, pillars, and ceiling beams; court held that earth movement exclusion was not applicable to human action, and therefore did not bar coverage); *Sentinel Associates v. American Manufacturers Mut. Ins. Co.*, 804 F.Supp. 815 (E.D.Va.1992) (policyholder's shopping center damaged when soil supporting foundation washed away by broken water line; court construed earth movement exclusion to apply only to natural, rather than man-made, phenomena; genuine issue of fact remained of whether natural forces (settling) or a man-made problem (leaking water pipe) caused the damage); *Steele v. Statesman Ins. Co.*, 530 Pa. 190, 607 A.2d 742 (1992) (next-door neighbor overloaded property during construction, causing hillside to collapse onto policyholder's house; court applied *ejusdem generis* doctrine and construed

earth movement and landslide exclusion to apply only to natural events; coverage existed for hillside collapse due to man-made event of construction); *Howell v. State Farm Fire & Cas. Co.*, 218 Cal.App.3d 1446, 267 Cal.Rptr. 708 (1990) (summer brush fire destroyed vegetation, and subsequent winter rain triggered landslide damaging insured property; policy provided coverage for losses caused by brush fire; under California statute, earth movement and water damage exclusions could only operate to avoid coverage if an excluded event (earth movement or water damage rather than brush fire) was the "efficient proximate cause" of the loss); *Safeco Ins. Co. of America v. Hirschmann*, 112 Wash.2d 621, 773 P.2d 413 (1989) (heavy rain and high wind—a covered risk—caused landslide which damaged policyholder's home; insurance company argued policy excluded coverage for earth movement "whether occurring alone or in any sequence with a covered peril;" court held issue of which event (rain and wind or landslide) was the efficient proximate cause of loss was question of fact, and that exclusions only circumvented coverage when the excluded peril was the efficient proximate cause of loss); *Garvey v. State Farm Fire & Cas. Co.*, 48 Cal.3d 395, 257 Cal.Rptr. 292, 770 P.2d 704 (1989) (addition to policyholder's house pulled away; policyholder alleged loss caused by contractor negligence; insurance company denied coverage and alleged loss caused by excluded event of earth movement; court ruled that in light of conflicting evidence, question of which event was the proximate cause of the loss, and thereby whether coverage existed, was a jury question); *Clyce v. St. Paul Fire & Marine Ins. Co.*, 850 F.2d 1398 (11th Cir.1987) (retaining wall and basement wall damaged, allegedly due to "earth pressures;" insurance company refused coverage under earth movement exclusion; court held that "earth movement" and "earth pressures" were significantly different terms for coverage purposes, and evidence created jury question as to whether coverage existed); *Peters Township School Dist. v. Hartford Acc. & Indemn. Co.*, 833 F.2d 32 (3d Cir. 1987) (schools damaged by subsidence in mines inactive for nearly 50 years; court held that earth movement exclusions have

historically related to natural, catastrophic earth movement; because mine subsidence was not "natural" but the result of man's activity, coverage existed under policy); *Jones v. St. Paul Ins. Co.*, 725 S.W.2d 291, 294 (Tex.Ct.App.1986) (court found earth movement exclusion unambiguous, but concluded that settling of policyholder's house resulting from soil contracting as it dried was not "earth movement" as contemplated by the policy. "The earth movement exclusion contemplates abnormally large movements such as the examples listed."); *Villella v. Public Employees Mut. Ins. Co.*, 106 Wash.2d 806, 725 P.2d 957 (1986) (building contractor negligently failed to provide proper drainage around policyholder's house, causing foundation to be undermined and house to settle; insurance company argued coverage precluded if earth movement contributed to the loss, "regardless how slight in degree;" court disagreed, holding that if negligent construction was the efficient proximate cause of loss, coverage existed); *Henning Nelson Constr. Co. v. Fireman's Fund American Life Ins. Co.*, 383 N.W.2d 645 (Minn.1986) ("[T]he earth movement exclusion must be construed to apply to earth movements caused by widespread disasters and not to those caused by human forces." Court found coverage when eight possible man-made causes combined on construction site to push earth against foundation wall and cause its collapse); *Ariston Airline & Catering Supply Co. v. Forbes*, 211 N.J.Super. 472, 511 A.2d 1278 (1986) (earth movement exclusion limited to natural phenomena akin to earthquakes, landslides or floods; exclusion did not exclude coverage for frost-heave damage to freezer floor caused by design and construction defects); *United Nuclear Corp. v. Allendale Mut. Ins. Co.*, 103 N.M. 480, 709 P.2d 649 (1985) (earthen dam collapsed due to "differential settling," releasing 94 million gallons of uranium tailings; applying doctrine of *ejusdem generis*, court construed term "earth movement" to cover only natural phenomenon, and exclusion did not apply to the collapse of the dam); *Holy Angels Academy v. Hartford Ins. Group*, 127 Misc.2d 1024, 487 N.Y.S.2d 1005 (N.Y.Sup. 1985) (policyholder's building damaged by construction of subway tunnel; court held

losses covered by policy, and found earth movement exclusion inapplicable because exclusion was only designed to remove from coverage losses occurring from natural causes such as earthquakes); *Mattis v. State Farm Fire & Cas. Co.*, 118 Ill.App.3d 612, 73 Ill.Dec. 907, 454 N.E.2d 1156 (1983) (policyholder's basement wall displaced by settling of backfill due to improper construction; court held earth movement exclusion was ambiguous, limited to same class as earthquake and landslide, and did not provide insurance company a basis for denial of coverage); *Bly v. Auto Owners Ins. Co.*, 437 So.2d 495 (Ala.1983) (policyholder's house damaged by vibrations from logging trucks; court held loss was outside earth movement exclusion because "the enumerated types of earth movement are all natural phenomena"); *Barash v. Insurance Co. of North America*, 114 Misc.2d 325, 451 N.Y.S.2d 603, 607 (1982) (fill beneath policyholder's home decomposed and foundation collapsed; court held earth movement exclusion limited to "sudden earth movement on a large scale," and deterioration of the fill beneath one house is not a large-scale earth movement; loss was outside exclusion); *State Farm Ins. Companies v. Gilbert*, 3 Ark.App. 52, 621 S.W.2d 880 (1981) (retaining wall collapsed into policyholder's yard; court held that because exclusionary clause contained only the term "earth movement" alone without other limiting words, term was ambiguous and question of fact was created over meaning of the term); *Peach State Uniform Service, Inc. v. American Ins. Co.*, 507 F.2d 996 (5th Cir.1975) (policyholder's building collapsed when sewer caved in beneath foundation; court held loss outside policy exclusion for "other earth movement;" phrase was ambiguous, and would be construed to refer only to "phenomena related to forces operating within the earth itself"); *Wisconsin Builders, Inc. v. General Ins. Co. of America*, 65 Wis.2d 91, 221 N.W.2d 832 (1974) (policyholder-contractor built apartment building beneath bluff; to prevent landslides, policyholder filled space between building and bluff with twice the specified amount of fill; weight of fill dirt combined with bulldozer moving dirt caused apartment wall to collapse; trial court erred in defining earth movement as "all movements of the

earth whether it be up, down or sideways;" term "earth movement" should be limited to same class of peril as earthquake and landslide, and case remanded for trial); *Strubble v. United Services Automobile Association*, 35 Cal.App.3d 498, 110 Cal.Rptr. 828 (1973) (insured's home damaged by landslide triggered by earthquake; court held that because policy provided coverage for earthquake, landslide exclusion was inapplicable and coverage existed under policy); *Vormelker v. Oleksinski*, 40 Mich.App. 618, 199 N.W.2d 287 (1972) (contractor ignored engineer's report and built policyholder's home on unstable soil; soil shifted, damaging home; insurance company asserted earth movement exclusion; court concluded that whether proximate cause of loss was earth movement (excluded) or improperly constructed foundation (covered) was a jury question); *Gullett v. St. Paul Fire & Marine Ins. Co.*, 446 F.2d 1100 (7th Cir.1971) (boulders from retaining wall fell on policyholder's building; court applied doctrine of *ejusdem generis* and held earth movement exclusion limited to earthquakes and landslides; jury question existed as to whether loss was caused by "falling objects"—a covered peril—or landslide—an excluded peril); *Government Employees Ins. Co. v. DeJames*, 256 Md. 717, 261 A.2d 747 (Md.App.1970) (foundation of policyholder's house collapsed due to possible contractor negligence; court held that under doctrine of *ejusdem generis*, term earth movement was limited to "unusual movement" and not normal pressures and settling); *Wyatt v. Northwestern Mut. Ins. Co. of Seattle*, 304 F.Supp. 781 (D.Minn.1969) (contractor excavated property adjacent to policyholder's home removing lateral support and damaging home; insurance company denied coverage citing earth movement exclusion; court limited exclusion to "occasional major disasters which are almost impossible to predict and thus insure against" such as earthquakes and floods; exclusion did not apply to earth movement events involving human action); *General Ins. Co. of America v. Lapidus*, 325 F.2d 287 (9th Cir.1963) (policy excluded coverage for settling but contained coverage for landslide; court found coverage existed for continuing slippage of soil around insured's home); and *Anderson v. Indiana Lumbermens Mutual Ins. Co.*, 127 So.2d 304 (La.App.1961) (policy excluded coverage for earth movement, but covered landslides; coverage existed for settling because it was a "collapse.").

B. Jurisdictions that have concluded that earth movement exclusions are not ambiguous, and apply to absolve the insurance company from any liability under the policy regardless of the cause or type of earth movement, include: *State Farm Fire & Cas. Co. v. Bongen*, 925 P.2d 1042 (Alaska 1996) (construction company clear cut land above policyholder's property; heavy rains caused mudslide that damaged property; court held that earth movement exclusion was unambiguous and precluded coverage); *Kula v. State Farm Fire & Cas. Co.*, 212 A.D.2d 16, 628 N.Y.S.2d 988 (N.Y.A.D.1995) (water line from policyholder's well ruptured, washing out dirt supporting one corner of house and damaging foundation; court found policy unambiguously excluded coverage for earth movement regardless of the cause, whether natural or human); *Alf v. State Farm Fire & Cas. Co.*, 850 P.2d 1272 (Utah 1993) (water line to policyholder's house froze and burst, washing away soil beneath tennis court and driveway; court found that while damage to the pipe was covered, policy unambiguously excluded coverage for earth movement); *Schroeder v. State Farm Fire & Cas. Co.*, 770 F.Supp. 558 (D.Nev.1991) (water pipe ruptured, saturating soil and causing damage to policyholder's building; court held policy unambiguous and excluded earth movement caused by "non-natural phenomena"); *Millar v. State Farm Fire & Cas. Co.*, 167 Ariz. 93, 804 P.2d 822 (1990) (policyholder's home damaged when soil beneath it sank due to water escaping from broken sprinkler system; court found earth movement exclusion unambiguous and denied coverage); *Village Inn Apartments v. State Farm Fire & Cas. Co.*, 790 P.2d 581 (Utah App.1990) (water pipe ruptured, saturating soil beneath policyholder's apartments and causing foundation to settle eight inches; earth movement exclusion unambiguous and precluded recovery); *Nida v. State Farm Fire & Cas. Co.*, 454 So.2d 328 (La.App.1984) (policyholder's home damaged when clay soil beneath home expanded and

contracted; court found earth movement exclusion unambiguous and denied coverage); *Stewart v. Preferred Fire Ins. Co.*, 206 Kan. 247, 477 P.2d 966 (1970) (policyholder's home sank into mine shaft underlying property; court declined to apply *ejusdem generis*, and held earth movement clause includes act originating from the carelessness of man); *Underwood v. United States Fidelity & Guaranty Co.*, 118 Ga.App. 847, 165 S.E.2d 874 (1968) (city negligently widened creek, causing water to damage bridge serving as policyholder's driveway; court found earth movement exclusion unambiguous, and because earth movement contributed to the loss, no coverage existed).

C. For additional sources, *see* B. Mattis, *Earthquake and Earth Movement Claims Under All–Risk Insurance Policies in the New Madrid Fault Zone*, 21 Mem.St. U.L.Rev. 59 (1990); B. Mattis, *Earth Movement Claims Under All Risk Insurance: The Rules Have Changed in California*, 31 Santa Clara L.Rev. 29 (1991). *See generally*, R. Brazener, *Property Insurance: Construction and Effect of Provision Excluding Loss Caused by Earth Movement or Earthquake*, 44 A.L.R.3d 1316 (1972).